### TEXAS CERTIFIED COTTONSEED BREEDERS' ASS'N v. ALDRIDGE. *
### No. 4431.

Court of Civil Appeals of Texas. Texarkana.

March 8, 1933.

Rehearing Denied March 16, 1933.

O. K. Bullard, of Dallas, for appellant.

Clark, Harrell & Clark, of Greenville, for appellee.

LEVY, Justice (after stating the case as above).

The point arising in the facts of the case and presented on the appeal for decision is that of whether or not the appellant association can resort to the personal responsibility of the appellee for the $1 per bushel advanced on his cottonseed on January 30, 1931. In order to properly measure the liabilities of the parties, it is necessary, first, to determine their relationship, whether it be that of seller and buyer or of sales agency. The marketing contract in evidence has apt words of sale and of a present transfer of exclusive possession and absolute title of the cottonseed, for the price stated, after the deductions named are made. It is believed that it is in operation and effect a contract of purchase and sale, and not of agency. Texas Farm Bureau Cotton Ass'n v. Stovall, 113 Tex. 273, 253 S. W. 1101. In this conclusion the 11,916 bushels of certified cottonseed which the appellee constructively delivered by warehouse receipt to the association must be regarded as legally belonging to the association in exclusive ownership.

The marketing contract expressly provides that, after delivery of the cottonseed to the association, the association might pledge the interests of each breeder as security for the money to be borrowed for "advances or partial payments" which might be made by the association upon the cottonseed so delivered. The contract does not specify that the advance when made shall be deducted or repaid from the receipts on resale of the cottonseed by the association. Consequently, if the advance so made should be deemed as intended as an absolute partial payment of that proportion of the price of the cottonseed, then, as is evident, the association, suing in assumpsit, could not predicate a liability against the breeder for a deficiency if the property proves insufficient to reimburse the association for its advances. And neither could the breeder as a member of the association be held personally liable to make good any deficiency or balance of the debt for money borrowed and owing the bank at Houston by the association, although the association be a co-operative association of nonprofit and without capital stock. The promise of the association to pay the bank of Houston is the personal covenant of the association only. Article 5750 of the Revised Statutes expressly provides that no member of the association "Shall be liable for the debts of the association" except in the special instances enumerated. But it is thought properly construing the terms of the contract it may not be reasonably determined that the parties contemplated that the advance so made by the association was to be regarded as an absolute and unconditional partial payment on the purchase price without expectation of reimbursement for any deficiency or balance if the property proves insufficient. The purchase price payable by the association was not in the nature of a fixed and determined debt at the time of the advance. The contract provision had the sole object in view to allow the breeder to realize in ad-

vance of the resale some portion of the price of his cottonseed. The term "advance" in its ordinary use indicates money paid before or in advance of the proper time of payment. It may be taken therefore as reasonable to suppose that it was in the contemplation of the parties that the association was to be reimbursed out of the resale of the cottonseed upon which the advances were made. The situation is similar to advances made by factors and commission merchants. 19 Tex. Jur. § 14, p. 533.

The advance having been made primarily against the money which will be due to the breeder upon the resale of his cottonseed in pool, the association must first have recourse to the fund derived from the resale. But the association's claim to reimbursement does not depend entirely upon the proceeds of the resale of the cottonseed, there being no special contract to that effect. So that, if the money from the resale of the cottonseed in pool should prove insufficient to fully reimburse the association for its advances, the law, in the absence of any agreement to the contrary, would imply an undertaking on the part of each breeder, severally but not jointly, to make up the deficiency as to him. "Assumpsit," 5 Tex. Jur. p. 151; 5 C. J. p. 1380; 2 Elliott on Contracts, § 1374, p. 622.

The particular circumstances appearing in the case have the effect, it is believed, of a complete defense against a deficiency judgment on the advance made by the association to the appellee. After the delivery of the cottonseed to the association and before the resale in any pool, the appellee's cottonseed was destroyed by fire. At the time of the fire the cottonseed was in a separate warehouse and had not lost identity by being commingled with the cottonseed of the other breeders. The association carried fire insurance on the cottonseed and collected the insurance money on appellee's cottonseed, "on the basis of $1.75 per bushel, the agreed insurance value." It clearly appears that the amount realized as indemnity for the loss of the property against which the advance was made is a sum largely in excess of such advance. It would follow, therefore, that, if the association must first have recourse for reimbursement out of the insurance money, then the evidence furnishes no foundation for the present action of the association. The loss of the cottonseed by fire made it impossible for the association to make resale of it in pools and to pay over to appellee his proportion of the net proceeds. The loss by fire entirely eliminated such cottonseed from the pool. A pooling of the cottonseed of each breeder with those of the other breeders with actual sale was the requirement under the contract in order for each breeder to be beneficially interested in the fund derived through the average price per pound paid for all cottonseed delivered to the association for resale. The breeder whose cottonseed might be destroyed by fire and consequently eliminated from the sale in pool could have no expectancy or interest in the net proceeds of sale in pool. Each breeder was liable for advances severally and not jointly. The loss by fire, though, would not operate to relieve the association of paying the purchase price of the cottonseed, whether measured by the market value at time of loss by fire or at time they might have been sold in pools. It is a settled rule that, in the absence of agreement, the risk of loss as between buyer and seller must be borne by the party who has title to the property at the time the loss occurs. 55 C. J. § 608, p. 597. The insurance money representing the value of the cottonseed at the time of the fire, as appears in the facts, the appellee would as against the association and as against the other breeders have a beneficial interest therein. While the overhead charges and premium for insurance were proportionally charged against the different breeders, yet the marketing contract does not provide for the pooling of the insurance collected from the loss of any lot of the cottonseed. The insurance was taken out by the association as owner of the cottonseed in protection of its liability to the particular breeder in case the association has disabled itself through loss by fire from pooling the particular cottonseed and paying over the proceeds of the sale, as contracted to do. It strongly appears that the association must first have recourse for reimbursement to the insurance fund in its hands before being entitled to a deficiency judgment.

The judgment is affirmed.